**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 21CR446 |
| v. | ) | Hon. Martha Maria Pacold |
| | ) | |
| RUBEN CARTER, | ) | |
| | ) | |
| Defendant. | ) | |

**RUBEN CARTER'S SENTENCING MEMORANDUM**

Ruben Carter, by and through his attorney, Joshua B. Kutnick, respectfully asks this Honorable Court, pursuant to 18 U.S.C. § 3553 and *United States v. Booker*, 543 U.S. 220 (2005) and its progeny, to impose a sentence of **180 months** on Count One, followed by a reasonable term of supervised release. Such a sentence is sufficient but not greater than necessary given this particular fact pattern and this particular defendant.

CARTER does not minimize the seriousness of this offense. The crime of conviction involved one vulnerable minor whom Defendant took advantage of her lack of life experience. However, a sentence of 180 months is sufficient, but not greater than necessary to advance the statutory purposes of sentencing for a 39-year-old man with no prior incarceration, a history of substance abuse, and who will be subject to lifetime registration as a sex offender.

## I. Sentencing Guideline Calculation

The Probation Office calculates a Total Offense Level of 40 and a Criminal History Category of II, yielding an advisory range of 324 to 405 months. PSR ¶¶ 19–30, 41–42, 99. CARTER states his position as follows.

Base Offense Level

Defendant agrees with the Government that the base offense level is 30. §2G1.3(a)(2). The probation department contends that the base offense level is 32. §2G2.1(a). The court should find that the base offense level is 30 because the victim was not trafficked "for the purpose of producing a visual depiction of such conduct", therefore §2G2.1 does not apply. Defendant does stipulate that he did create a video depicting the victim and himself engaging in a sex act. The government does not allege that the video was ever used for the promotion of sex trafficking the victim. Therefore, Defendant contends the base offense level is 30 pursuant to §2G1.3(a)(2).

Offense Involved Sex Act - Defendant agrees that the offense involved sexual acts between the minor and the customers to whom she was trafficked, so the two-level enhancement applies pursuant to §2G2.1(b)(2)(A).

Posted Ads – Defendant admitted in his plea agreement that he took photographs of Minor A in order to post online for commercial sex acts warranting a two-level enhancement. §2G2.1(b)(3).

Use of a Computer

The PSR applies the two-level enhancement because the offense involved use of computer to solicit participation with a minor in sexually explicit conduct by taking photos of Minor A that were eventually posted in ads. PSR ¶23. The defendant objects because this enhancement predates the omnipresent and pervasive use of computers in our daily lives and should not be used anymore. It is now an outdated enhancement as distinguished from sex-trafficking as was done in the days when traffickers and sex workers worked the streets or brothels or were advertised in print media. Commercial sales of all products and services are now sold online, even more than other means.

The use of a computer, or cell phone to solicit sex should no longer be an aggravating factor because now solicitation and advertisement happen almost exclusively online. While Defendant used electronic devices in this matter, the court should consider a not applying this enhancement because the omnipresence of cell phones and computers means the enhancement fails to serve its original purpose of punishing crimes more severely where electronic means were employed.

Sexual Contact – Defendant agrees the Government could meet its burden for this enhancement based on the video. Therefore, the two-level enhancement pursuant to §2G1.3(b)(4)(A) applies.

Acceptance of Responsibility is undisputed.

Chapter Four Enhancement – Defendant agrees that the offense of conviction is a covered sex crime and that neither §4B1.1 nor subsection (a) applies, and that the Government could meet its burden that he engaged in a pattern of prohibited sexual conduct. §4B1.5(b)(1). A pattern of activity involving prohibited sexual conduct occurs if on at least two occasions, the defendant engaged in prohibited sexual conduct with a minor. §4B1.5 Appl. Note 4. He admitted such in his plea agreement. Pl. Agr. p. 3. Thus, the five-level enhancement does apply.

Defendant argues that his adjusted offense level is therefore 38, based on his above calculations. He agrees that he is a criminal history category II which results in an advisory guideline range of 262 to 327 months. For the reasons stated herein, CARTER argues that this range is greater than necessary to effectuate the purposes of sentencing.

## II. Nature and Circumstances of the Offense

The nature and circumstances of the offense are serious and involve the sexual exploitation

of a minor. CARTER does not ask this court to view this conduct as anything other than what it was and he admitted to. Minor A was vulnerable, and CARTER exploited that vulnerability. The offense occurred over several months and caused real and substantial harm but notably involved only one victim. The aggravating aspects of this case are not diminished by the following § 3553(a) factors. Rather, the factors speak to who CARTER is outside of the charged conduct, and what sentence is a sufficient but not greater than necessary sentence in this specific case and specifically for RUBEN CARTER.

## III. CARTER'S History and Characteristics

### A. Upbringing and Background

CARTER is 39 years old. He was raised on the west side of Chicago by his mother, Henrietta Gordon, who supported the family by owning and operating her own beauty shop. His father relocated to San Francisco when CARTER was four years old, though the two did maintain contact. PSR ¶ 71.

CARTER'S mother kept him involved in church during his childhood, which she believed to be a buffer against the streets and gang influence. That protective environment just made him more curious about the life she was trying to keep him from. PSR ¶ 72. When CARTER was approximately 15 years old, his brother Raphael died suddenly. He describes that loss as the moment he began getting into trouble. Before descending too far down that path, his stepfather, David Downey (CARTER'S father figure and the most consistent stabilizing presence in his life) intervened and helped him redirect his life. PSR ¶ 72. Unfortunately, Mr. Downey died of a heart attack in 2025. CARTER was detained in this case and unable to attend the funeral or grieve with his family. *Id.* The loss of CARTER's father figure while he was incarcerated was one of the most

impactful aspects of CARTER's long pretrial incarceration.

At 14, CARTER was sent to live with his father in California in 2001. He stayed less than a year and returned to Illinois soon after. PSR ¶ 73. He returned to San Francisco in 2011, where he had stable employment, his own car, and an apartment. He came back to Illinois after his 21-year-old niece was murdered. *Id.* The decision to return to Chicago after that loss reflects a pattern in CARTER'S life of being pulled back toward instability by grief. Each time CARTER found footing, a loss pulled him back.

**B. Substance Abuse**

CARTER began using marijuana at age 12 and became a daily user after graduating from high school. He acknowledges that his marijuana dependence limited his employment prospects because he could not pass a drug test. PSR ¶ 86.

The offense in this case occurred during the most acute period of CARTER'S substance use. Following a significant relationship breakdown in 2018, during which he reports having "lost everything," CARTER began drinking alcohol daily and using ecstasy regularly, in addition to his ongoing marijuana use. That pattern of daily multi-substance use continued from 2018 through the spring of 2021. PSR ¶ 87. The offense conduct falls squarely within that window. CARTER has not used substances since his detention in this case. He has expressed willingness to participate in both substance abuse and sex offender treatment. PSR ¶¶ 87–88.

The court should consider CARTER'S substance use as a backdrop for the crime he committed. Section 3553(a)(1) requires the court to consider the full history and characteristics of the defendant, which includes the circumstances under which the offense was committed. CARTER'S documented multi-substance dependence during the offense window is part of that

picture.

### C. Family

CARTER has five children, ranging in age from 11 to 20. CARTER maintains as much contact with them as possible given the inherent restrictions of incarceration. CARTER expressed regret that he is "raising my kids off a jail phone" and is unable to be present for milestones in their lives. PSR ¶ 76.

CARTER'S mother is 76 years old and still lives in Chicago. She has chronic back pain and difficulty walking, which makes in-person visits to CARTER difficult. PSR ¶ 70. Prior to his detention, CARTER served as her primary caregiver and provided her with financial assistance and day-to-day support. *Id.* CARTER has watched his mother age during his detention and has expressed that not being able to help her is among the most difficult aspects of his incarceration. PSR ¶ 85. Though he used to receive frequent visits from his family at the MCC, those visits have become less frequent as his mother's health has declined. CARTER also lives with the fear that his mother will suffer some other illness or perhaps not live to see him released. This thought has weighed heavily on him throughout his incarceration.

### D. Mental Health

CARTER has never received mental health treatment of any kind. Since his detention, he has experienced depression and, at the outset of this case, suicidal ideation. PSR ¶ 85. CARTER has never been incarcerated before for any significant period of time. The adjustment to custodial life has been difficult, as reflected in the disciplinary record, and that record must be read in the context of a man who had no prior institutional experience before being detained in 2019.

## IV. The § 3553(a) Factors Support a Sentence of 180 Months

### A. No Prior Incarceration and Successful Completion of Supervision

CARTER has never served a day in prison other than pretrial detention for this case. His two prior sentences were terms of conditional discharge, both of which he completed successfully. PSR ¶¶ 37, 40. The Probation Office itself acknowledges this directly: "it is presumed that, as the defendant has never served a sentence of imprisonment, a lesser sentence may be sufficient to deter the defendant from committing future criminal conduct." Probation's Sentencing Recommendation at 3.

The worldwide pandemic markedly affected the nature of imprisonment and has altered the landscape for sentencing for prisoners who were incarcerated during that time. As this court is aware, 18 U.S.C. § 3553(a) "contains an overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary,' to accomplish the goals of sentencing." *Kimbrough v. United States*, 552 U.S. 85, 101 (2007) (quoting 18 U.S.C. § 3553(a)); *see also Holguin-Hernandez*, 589 U.S. 169, 173 (2020). When courts consider conditions of incarceration during this period, it is necessary to examine this statutory provision in a more deliberate way. During the pandemic, CARTER was in state custody or on electronic monitoring from June 2019 through September 2021, when he was indicted in this matter for the same conduct that led to the state case. He was essentially in lockdown conditions like solitary confinement, subjected to the constant fear of contracting a deadly illness, unable to assist his family in ensuring they are safe, and unable to visit family members or even his attorney.

Unsurprisingly, these conditions fueled the spread of COVID-19 throughout BOP facilities during the first year of the pandemic. Thus, because of COVID-19, the time CARTER spent in custody was necessarily more severe than it ordinarily would have.

CARTER is not a defendant who has cycled through the system and remained undeterred. He is a defendant for whom a significant custodial sentence has been and will continue to be a complete transformation of his life experience. A sentence of 180 months (15 years) is not a light consequence. The question is not whether CARTER will be punished severely. He will be. The question is whether every purpose of sentencing is already accomplished by 180 months, such that adding years beyond that number serves no additional penological function.

The totality of CARTER'S punishment extends well beyond the prison term itself. Upon conviction, CARTER is required to register as a sex offender for life under the Sex Offender Registration and Notification Act. He faces employment barriers, residency restrictions, public registration, and the permanent loss of civil rights that accompany a federal felony conviction. Upon release, he will serve a term of supervised release with sex offender treatment conditions, monitoring, substance abuse programming, and restrictions on contact with minors.

These collateral consequences in addition to the requested term of incarceration accomplish the general deterrence and specific incapacitation goals of § 3553(a)(2)(B) and (C). Piling additional years of imprisonment on top of this structure does not advance those goals. It simply increases the punishment beyond what is necessary.

**B. Acceptance of Responsibility**

CARTER provided a post-arrest statement in which he acknowledged committing the offense. PSR ¶ 16. He pled guilty pursuant to a written plea agreement and admitted additional

relevant conduct beyond what Count One required him to admit. PSR ¶¶ 3, 17. He was cooperative with the probation officer during the presentence investigation. PSR ¶ 17. His acceptance of responsibility is genuine and has been consistent from arrest through sentencing.

**C. Openness to Treatment**

CARTER has affirmatively stated his desire to participate in both sex offender treatment and substance abuse treatment while incarcerated and upon release. PSR ¶¶ 84, 87–88. The Probation Office identifies this willingness as a mitigating factor and notes that treatment "presumably would reduce the risk of recidivism and risk to the public." Probation's Sentencing Recommendation at 5. CARTER asks that the court recommend his placement in a facility that offers both the Residential Drug Abuse Program (RDAP) and the Sex Offender Management Program (SOMP), consistent with Probation's recommendation.

**D. Time in Custody for This Conduct**

CARTER was first detained in state custody on the same conduct underlying this offense (19 CR 0826701) on May 19, 2019. He spent approximately fourteen months in state custody, both in jail and on electronic monitoring, related to this conduct, in addition to the approximately fifty-eight months he has served in federal custody through the date of sentencing. While the BOP may not award CARTER sentencing credit for time spent in state custody prior to the federal initiation of this case, the court may consider the totality of CARTER'S time in custody on this same offense as part of the § 3553(a) analysis to determine an appropriate sentence.

**E. Sentencing Disparity**

Section 3553(a)(6) directs the court to avoid unwarranted sentencing disparities among

defendants with similar records who have been found guilty of similar conduct. The most instructive reference point in this district is *United States v. Biancofiori*, No. 16 CR 306, where a defendant received 360 months for sex trafficking nine victims over a period of years. The government sought a life sentence. That defendant branded victims with his initials, led a ring of men who assisted in trafficking, had 23 criminal history points, and on one occasion arranged for a victim to be returned to him at gunpoint.

CARTER'S case is categorically less severe than *Biancofiori* on every relevant dimension. CARTER acted alone, with a single victim, over a period of four months. PSR ¶¶ 8–12. He has two criminal history points and no prior sex offense convictions. PSR ¶¶ 41–42. He is not alleged to have been a leader of a criminal organization. He pled guilty, accepted responsibility, and admitted additional relevant conduct beyond what the plea required. A sentence of 180 months, half of what the court imposed in *Biancofiori*, reflects those distinctions and avoids the unwarranted disparity § 3553(a)(6) is designed to prevent. Imposing a sentence at or near the guideline floor of 324 months for CARTER'S conduct would produce a result approaching, or exceeding, what courts have imposed in this district on far more culpable defendants.

## V. **Conclusion**

A sentence of 180 months, followed by a reasonable term of supervised release with sex offender treatment and substance abuse treatment conditions, is sufficient but not greater than necessary to satisfy § 3553(a) in this case. CARTER respectfully asks the Court to impose that sentence and to recommend his designation to a facility offering RDAP and SOMP.

Respectfully Submitted,

Joshua B. Kutnick

Attorney for Ruben Carter

**CERTIFICATE OF SERVICE**

I, Joshua B. Kutnick, an attorney, certify that in accordance with Fed. R. Crim. P. 49, Fed. R. Civ. P. 5, LR 5.5, and the General Order on Electronic Case Filing (ECF), I electronically filed the foregoing Defendant's Sentencing Memorandum with the Clerk of the United States District Court for the Northern District of Illinois using the ECF system, which will send notification of such filing to all counsel of record.

Joshua B. Kutnick
Attorney for Ruben Carter

**JOSHUA B. KUTNICK**
**900 W. Jackson Blvd., Suite 7E**
**Chicago, Illinois 60607**
**312-441-0211**
**Joshua@kutnicklaw.com**